# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ANTHONY BROWNING,                Case No: 2-13-cv-13694
MABLE CARTER,                     Hon. Arthur J. Tarnow
                                       Mag. Laurie J. Michelson

         Plaintiffs,

                                     <u>Prior Case:</u>
v.                                     Case No. 2:11-cv-12014
                                     Hon. Arthur J. Tarnow

BANK OF AMERICA CORPORATION,

         Defendant.
_____
Vanessa Fluker (P64870)
Vanessa Fluker PLLC
Attorney for Plaintiffs
2921 E Jefferson Ave Ste 200
Detroit, MI 48207
(313) 393-6005
_____

# PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# TABLE OF CONTENTS

INDEX OF AUTHORITIES CITED .............................................................................iii

STATEMENT OF QUESTIONS PRESENTED ...........................................................iv

INTRODUCTION ...................................................................................................... 1

STATEMENT OF FACTS ........................................................................................ 2

STANDARD OF REVIEW ....................................................................................... 6

LEGAL ARGUMENT ............................................................................................... 9

I.    PLAINTIFFS' COMPLAINT ALLEGES SUFFICIENT FACTS WITH ADEQUATE SPECIFICITY TO SUPPORT THEIR CLAIMS .............. 9

II.    THE BINDING AND CONTROLLING AUTHORITY OF *MITAN V. FED. HOME LOAN MORTG. CORP.*, 703 F3D 949 (6TH CIR. MICH. 2012) MUST BE APPLIED TO CASES RAISING ISSUES OF MCL 600.3205 ................................................................................... 10

III.    PLAINTIFFS PROPERLY RAISED THE ISSUE OF WHETHER DEFENDANT IS IN VIOLATION OF MCL 600.3205 AND MCL 600.3204 AND PLAINTIFFS DEMONSRTATE AN IRREGULARITY WITH THE FORECLOSURE ............................................. 12

IV.    DEFENDANT'S MOTION SHOULD BE DENIED PURSUANT TO THE DOCTRINE OF EQUITABLE ESTOPPEL, AS DEFENDANT VIOLATED MCL 600.3205 AND MCL 600.3204 .......................................... 21

CONCLUSION ....................................................................................................... 23

CERTIFICATE OF SERVICE

# INDEX OF AUTHORITIES

**CASES**

*Bell Atlantic Co. v. Twombly*, *550 U.S. 544, 127* S. Ct. 1955, 167 L.Ed 2D 929 (2007)..................................................................................................................... 6

*Galliard v. USAA Fed. Sav. Bank*, 2012 U.S. Dist. LEXIS 163211 (E.D. Mich. Nov. 15, 2012) ...................................................................................................... 14, 20

*In Re Bank of America HAMP Contract, Multi-District Litigation*, Case No. 10-02193, US District Court, District Court of Massachusetts ......................................... 1

*Johnson v. Equity Title & Escrow Co. of Memphis, LLC*, 476 F. Supp. 2d 873, 876-877 (W.D. Tenn. 2007)............................................................................................. 7

*Lichon v American Universal Insurance Co.*, 435 Mich 408, 415; 459 NW2d 288 (1990)................................................................................................................... 22

*Mitan v. Fed. Home Loan Mortg. Corp.*, 703 F3d 949 (6th Cir. Mich. 2012) .......... 10, 11

*Montgomery v Huntington Bank*, 346 F3d 693, 697-698 (citation omitted) ................... 9

*R.S.W.W., Inc., d/b/a Goose Island Brewery v City of Keego Harbor*, 397 F3d 427, 433 (6th Cir 2005) ............................................................................................... 9

*Roller v. Federal National Mortgage Association et al.*, 2012 U.S. Dist. LEXIS 127830 (E.D. Mich. June 4, 2012) ....................................................... 17, 18, 19, 20

*Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974)............. 7

*Tyler Fixture Corp. v. Dun & Bradstreet, Inc.*, 3 F.R.D. 258, 259 (D. Mich. 1943)....... 8

**STATUTORY PROVISIONS**

MCL 600.3204 ............................................................................. 9, 10, 12, 13, 14, 21, 23

MCL 600.3205 ...................................... 4, 6, 9, 10, 11, 12, 14, 16, 17, 19, 20, 21, 22, 23

**FEDERAL RULES**

Fed. R. Civ. P Rule 12(b)(6) ................................................................................. 6, 7, 9

**FEDERAL AUTHORITIES**

Home Affordable Modification Program (HAMP) .......................................... 3, 6, 19, 20

## STATEMENT OF QUESTION PRESENTED

I.   WHETHER PLAINTIFFS' COMPLAINT ALLEGES SUFFICIENT FACTS WITH ADEQUATE SPECIFICITY TO SUPPORT THEIR CLAIMS?

II.   WHETHER THE BINDING AND CONTROLLING AUTHORITY OF *MITAN V. FED. HOME LOAN MORTG. CORP.*, 703 F3D 949 (6TH CIR. MICH. 2012) MUST BE APPLIED TO CASES RAISING ISSUES OF MCL 600.3205?

III.   WHETHER PLAINTIFFS PROPERLY RAISED THE ISSUE OF WHETHER DEFENDANT IS IN VIOLATION OF MCL 600.3205 AND MCL 600.3204 AND PLAINTIFFS DEMONSRTATE AN IRREGULARITY WITH THE FORECLOSURE?

IV.   WHETHER DEFENDANT'S MOTION SHOULD BE DENIED PURSUANT TO THE DOCTRINE OF EQUITABLE ESTOPPEL, AS DEFENDANT VIOLATED MCL 600.3205 AND MCL 600.3204?

## INTRODUCTION

Defendant Bank of America engaged in misrepresentation and fraudulent inducement in the mortgage modification process resulting in an attempt to illegally foreclosure Plaintiffs' mortgage loan. It is now known **this conduct is a pattern and practice** for Defendant.  Current Multi-District Litigation, *In Re Bank of America HAMP Contract Litigation*, Case No. 10-02193, US District Court, District Court of Massachusetts, has revealed through Bank of America's own employees, illegal and improper practices were required for job retention.  This conduct included lying to customers about receiving document, telling customers letter had been mailed, when they were not, consistently telling borrowers their loan was under review, when in fact the loan was not.  Bank of America employees testified under oath they were paid bonuses to delay review and approval of modification and other loss mitigation at the behest of Bank of America's management.  (**Docket No. 1-2**, Affidavits of Bank of America Employees, *In Re Bank of America HAMP Contract, Multi-District Litigation*, Case No. 10-02193, US District Court, District Court of Massachusetts)

**This is the exact conduct that Plaintiffs were subjected to** and Defendant's motion to dismiss and/or summary judgment must be denied.

## STATEMENT OF FACTS

Plaintiff Mable Carter has resided in her home at 14650 Robson Street, Detroit, Michigan 48227, since purchasing the home in 1970, and Plaintiff Anthony Browning, Mable Carter's adult son, has resided in this home for approximately 16 years.  The mortgage on Plaintiffs' home, originally held by The CIT Group/Consumer Finance, Inc., was made by Plaintiffs on December 2, 2000. Federal National Mortgage Association (Fannie Mae), a Government-Sponsored Entity (GSE), acquired an ownership interest in the mortgage sometime after the origination of the mortgage.  Thus, the mortgage was a GSE loan, owned, guaranteed, or securitized by Fannie Mae, shown by the assignment of the mortgage made by Fannie Mae as assignor to Defendant on September 2, 2010.

Defendant, Bank of America Corporation (BAC), became the servicer of the mortgage sometime after the origination of the mortgage, but the mortgage was not assigned to Bank of America Corporation (BAC) by Fannie Mae until September 2, 2010.  Plaintiff Anthony Browning completed a Chapter 13 Bankruptcy Plan that was confirmed on December 19, 2002, and concluded and discharged on June 19, 2007.  On more than one occasion in August 2007, representatives of Defendant informed Plaintiffs by telephone that they should not make a monthly mortgage payment because the bankruptcy was still "showing up" in Defendant's system and hadn't cleared yet. These conversations occurred two months after the bankruptcy had been discharged.

2

Plaintiffs requested a modification package for the Home Affordable Modification Program (HAMP) with assistance of a housing counselor on October 14, 2008. Plaintiffs received the HAMP application package and submitted the application with supporting financial documents in early 2009 with the assistance of their housing counselor.

Defendant continually delayed its review of the application, requiring updates of the initial application. Plaintiffs repeatedly resubmitted the HAMP application with the updated documents with the assistance of their housing counselor. Defendant commenced foreclosure by advertisement with published notices of foreclosure beginning on August 18, 2010, and a Sheriff's Sale was scheduled for September 15, 2010.

Defendants challenged the foreclosure action in U.S. District Court Case No. 2:11-cv-12014, resulting in a stipulated order dated December 2, 2011, and recorded with the Wayne County Register of Deeds on March 8, 2012. (**Docket No. 1-4**, Recorded Stipulated Order to Set Aside Foreclosure Sale and For Dismissal. Bank of America started the foreclosure process again with a 3205 mediation notice. (**Docket No. 1-5**, Trott & Trott Letter of Acceleration dated August 17, 2012, and **Docket No. 1-6**, Trott & Trott Mediation Letter dated August 17, 2012)

Plaintiffs by and through their legal counsel, Michigan Legal Services timely responded and attended their mediation in August 2012. (**Docket No. 1-7**,

3

Michigan Legal Services Letter dated September 5, 2012, and **Docket No. 1-3**, Affidavit of Marilyn Mullane of Michigan Legal Services)

On November 16, 2012, Plaintiffs' then legal counsel received a letter purporting to provide calculations under MCL 600.3205c(5), but the letter merely recited monthly income, monthly expenses and net income and provided no calculations. (**Docket No. 1-8**, Trott & Trott, P.C. Letter dated November 16, 2012)

Plaintiffs received a letter dated November 27, 2012, alleging Defendant was "unable" to contact Plaintiffs despite Plaintiffs being represented by counsel and having ongoing communication. (**Docket No. 1-9**, Bank of America Letter dated November 27, 2012)

Plaintiffs received a letter from Bank of America on December 7, 2012, totally contrary to the November 27, 2012, letter indicating Bank of America had received their recent inquiry. (**Docket No. 1-10**, Bank of America Letter dated December 7, 2012)

Plaintiffs then received a letter from Bank of America on December 10, 2012, indicating Plaintiffs would no longer have a single point of contact to assist them in the modification process. (**Docket No. 1-11**, Bank of America Letter dated December 10, 2012) Plaintiffs, by and through their legal counsel, Michigan

Legal Services, continued to update their application in December 2012 after receiving requests for more documents.

After sending the updates to the previous Bank of America "relationship manager," Kristina Torres on December 3, 2012, Plaintiffs learned that the relationship manager had changed to Stella Gharapetian and that she had a different fax number.  Plaintiffs, by and through their legal counsel, Michigan Legal Services, faxed the same updates to Stella Gharapetian on 12/21/12. (**Docket No. 1-12**, Updated Modification Package)

Ironically, on December 22, 2012, Plaintiffs received a letter advising Plaintiffs they could be "re-evaluated" for a modification, and Plaintiffs would have to start the complete process over. (**Docket No. 1-13**, Bank of America Letter dated December 22, 2012)  In January 2013, Plaintiffs by and through their legal counsel, learned from Stella Gharapetian, a Bank of America customer relationship employee, neither she nor Kristina ever found the documents Plaintiffs faxed in the Bank of America system.  It was a 52-page fax.

As result of the delay, Plaintiffs found themselves having to update the entire application **again**.  Plaintiffs, by and through their legal counsel, sent the complete update of 47 pages by fax to two different fax numbers that Plaintiffs received from Stella Gharapetian, as well as directly to Trott & Trott, P.C.'s mediation team.

Instead of reviewing Plaintiffs for a modification, Plaintiffs received a letter from Trott & Trott, P.C. that they would be starting the foreclosure process. **A foreclosure sale was scheduled for August 29, 2013, at 11:00 am.** (Docket **No. 1-14**, Notice of Foreclosure Sale) Plaintiffs were never provided calculations mandated by MCL 600.3205c, and the foreclosure process was never suspended, as required by the HAMP Guidelines, which is incorporated into MCL 600.3205.

## STANDARD OF REVIEW

## MOTION TO DISMISS

In evaluating a complaint under Fed. R. Civ. P Rule 12(b)(6), the court determines whether a claim upon which relief can be granted has been established. In a motion to dismiss pursuant to Fed R Civ P Rule 12(b)(6) a plaintiff must include enough facts to state a claim to relief that is plausible on its face. *Bell Atlantic Co. v. Twombly*, 550 U.S. 544, *127* S. Ct. 1955, 167 L.Ed 2D 929 (2007). The complaint must be liberally construed, assuming the facts therein are true and drawing all reasonable inferences from those facts in the plaintiff's favor. *Id. at 1964-1965*. A complaint should not be dismissed simply because a court is doubtful that the plaintiff will be able to prove all the factual allegations contained therein. *Id.*

In *Johnson v. Equity Title & Escrow Co. of Memphis, LLC*, 476 F. Supp. 2d 873, 876-877 (W.D. Tenn. 2007), the court further discussed the Standard of Review in a motion based on Fed. R. Civ. P Rule 12(b)(6). The court held:

> The court should accept all well-pleaded facts as true and not consider matters outside the pleadings. *Hammond*, 866 F.2d at 175. The United States Supreme Court has held that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41. 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957); see also *Neitzke*, 490 U.S. at 326-27; Lewis, 135 F.3d at 405 (6th Cir. 1997). Thus, the standard to be applied when evaluating a motion to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion. *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). Even if the plaintiff's chances of success are remote or unlikely, a motion to dismiss should be denied. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90(1974).

Moreover, it has been historically recognized the courts favor adjudicating the merits of claims.

> "Long before the Rules of Civil Procedure for the District Courts of the United States became effective, this Court had frequently disapproved the practice of attempting to put an end to litigation, believed to be without merit, by dismissing a complaint for insufficiency of statement. In *Winget v. Rockwood*, 8 Cir., 69 F.2d 326, 329, we said:
>
> "'A suit should not ordinarily be disposed of on such a motion (a motion to dismiss the bill for want of equity) unless it clearly appears from the allegations of the bill that it must ultimately, upon final hearing, be dismissed. ***To warrant such dismissal, it should appear from the allegations that a cause of action does not exist, rather than that a cause of action has been defectively stated***. * * *

> "'*That rule of procedure should be followed which will be most likely to result in justice between the parties*, and, generally speaking, that result is more likely to be attained by leaving the merits of the cause to be disposed of after answer and the submission of proof, than by attempting to deal with the merits on motion to dismiss the bill.'"

> It is further said (page 306 of 108 F.2d): "In view of the means which the Rules of Civil Procedure afford a defendant to obtain a speedy disposition of a claim which is without foundation or substance, by either securing a more definite statement or a bill of particulars under Rule 12 (e) and thereafter applying for judgment on the pleadings under Rule 12(h)(1), or by moving for a summary judgment under Rule 56, *we think there is no justification for dismissing a complaint for insufficiency of statement, except where it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of the claim*." *Tyler Fixture Corp. v. Dun & Bradstreet, Inc.*, 3 F.R.D. 258, 259 (D. Mich. 1943) (emphasis added)

Plaintiffs' complaint clearly meets the standards required to survive a 12(b)(6) motion to dismiss and Defendant's motion must be denied.

## SUMMARY JUDGMENT

This court also reviews whether the grant of summary judgment under Rule 56(c) is appropriate under the facts and law of this case. The Sixth Circuit Court of Appeals has held, "In deciding a motion for summary judgment, we view the factual evidence and draw all reasonable inferences in favor of the non-moving party. The moving party has the burden of proving that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law." *R.S.W.W., Inc., d/b/a Goose Island Brewery v City of Keego Harbor,* 397 F3d 427,

433 (6th Cir 2005), citing *Montgomery v Huntington Bank*, 346 F3d 693, 697-698 (citation omitted). Plaintiff raises significant genuine issues of material fact, and Defendant's brief raises even more. Therefore, Defendant's motion for summary judgment should be denied, especially since discovery has not even commenced.

## LEGAL ARGUMENT

### I. PLAINTIFFS' COMPLAINT ALLEGES SUFFICIENT FACTS WITH ADEQUATE SPECIFICITY TO SUPPORT THEIR CLAIMS.

Plaintiffs' complaint not only pleads sufficient facts to withstand a 12(b)(6) motion, but also raises numerous genuine issues of material fact. Defendant contends Plaintiffs' claims are false on their face and conclusory. **This is untrue**. Plaintiffs attached **eleven (11)** exhibits and two appendices to their complaint that specifically support the allegations against Defendant. Defendant cannot state it did not have notice of any claim brought by Plaintiffs and any difference alleged by Defendant to Plaintiffs' allegations are issues of fact, which are not appropriately resolved in Defendant's motion. Specifically, Plaintiffs asserted Defendant violated MCL 600.3205, which is an automatic violation of MCL 600.3204. Plaintiffs were being reviewed for a modification when Defendant's servicing agent foreclosed on the home, despite failing to comply with MCL 600.3205 and the clear language in Defendant's regulations that all foreclosure activity should be suspended pending the review of a borrower for eligibility.

Plaintiffs' have clearly demonstrated irregularity in the foreclosure process and have suffered prejudice as a result.

## II. THE BINDING AND CONTROLLING AUTHORITY OF *MITAN V. FED. HOME LOAN MORTG. CORP.*, 703 F3D 949 (6TH CIR. MICH. 2012) MUST BE APPLIED TO CASES RAISING ISSUES OF MCL 600.3205

In *Mitan v. Fed. Home Loan Mortg. Corp.*, 703 F3d 949 (6th Cir. Mich. 2012), plaintiff borrower requested mediation to be evaluated for a loan modification pursuant to MCL 600.3205. There was a ***factual dispute*** as to what happened after that. The borrower pled that he sent the lender requested documents to be evaluated for a loan modification under the statute. The borrower also pled that the lender, Wells Fargo, sent him a letter stating Wells Fargo had approved him for a loan modification and that he qualified for a loan modification under the statutory calculations. The Sixth Circuit overturned the District Court ruling that the borrower had no standing to sue once the redemption period expired. The Appeals Court held:

> Michigan law distinguishes between foreclosures with notice defects and those with "structural defects that go to the very heart of the defendant's ability to foreclose by advertisement in the first instance." *Davenport*, 739 NW 2d at 384. Notice defects render a foreclosure voidable. *Jackson Inv Corp. v Pittsfield Prods, Inc*. 413 NW 2d 99, 101 (Mich Ct App 1987). Structural defects, on the other hand, render the foreclosure absolutely void. *Davenport*, 739 NW 2d at 385. . . . MCL 600.3204(4) is a statutory prohibition on foreclosure by advertisement where a lender does not take the required steps to negotiate a loan modification. . . .[T]he failure to comply with

10

the loan modification process as outlined in the statute is a structural defect because it deprives the borrower of the opportunity to demonstrate eligibility for a loan modification that would avoid foreclosure altogether. See 600.3204(4)(f). In contrast, the notice defect at issue in Jackson did not call into question the underlying right of the lender to foreclose once past the procedural defect. See 413 NW 2d at 101. It follows that, as a matter of Michigan law, a lender that fails to follow the loan-modification procedures set forth by the statute has engendered a structural defect and is thus without authority to commence a foreclosure. Without a valid foreclosure, the redemption period has not begun, and the owner of the property retains an interest conferring standing to sue[1].

The Court held that the issues that would determine whether Wells Fargo forecloses on the property, in violation of the loan modification law, were factual.

The Court concluded:

> If further factual development shows that Wells Fargo did not comply with the loan modification law, then Mitan has standing and may pursue the merits of his claim. In sum, the district court erred when it held that Mitan lacked standing because the redemption period had expired. If Wells Fargo violated the loan modification law, then the redemption period never began. On remand, the district court should make factual findings to determine whether Wells Fargo assessed Frank's eligibility for a loan modification as required by statute. See *Mitan v. Fed. Home Loan Mortg. Corp.*, 703 F3d 949 (6th Cir. Mich. 2012)

The requirements of the MCL 600.3205 statute are mandatory and strict compliance is required. The Legislative Analysis of this statute clearly articulates the necessity of strict compliance to obtain the goal of keeping more homeowners

---

[1] Defendant's argument that Plaintiffs are limited in their remedy under MCL 600.3205 is in direct contradiction to the *Mitan* case, and as such, cannot be considered viable, as *Mitan i*s the controlling authority of the Sixth Circuit, and this Court is bound by the binding precedent of the Sixth Circuit.

in their home and decreasing foreclosures in Michigan.  In fact, the Legislative

Analysis states,

> When lenders foreclose on residential mortgage loans in Michigan, they typically use foreclosure by advertisement) rather than bringing a foreclosure action in court).  Foreclosure by advertisement is contractual in nature and governed in part by the terms of the mortgage document.  To help prevent foreclosures, it has been suggested that this process should include **mandatory procedures that would give homeowners an opportunity to meet with lenders and work out a loan modification**. (emphasis added) (**Exhibit 1**, Legislative Analysis, p. 1)

The statute and the legislative intent is clear.  The procedures contained

within the statute are mandatory **before** a sheriff's sale can occur.

### III.   PLAINTIFFS PROPERLY RAISED THE ISSUE OF WHETHER DEFENDANT IS IN VIOLATION OF MCL 600.3205 AND MCL 600.3204 AND PLAINTIFFS DEMONSRTATE AN IRREGULARITY WITH THE FORECLOSURE.

Plaintiffs have standing and the right to raise the issue of whether Defendant

complied with MCL 600.3205 and MCL 600.3204, which mandatory for a valid

foreclosure.  Michigan Courts have determined an accident, mistake or other

irregularity can render the process voidable and not subject to dismissal.  The

failure to comply with MCL 600.3205, makes compliance with MCL 600.3204

impossible.  The necessity of compliance with MCL 600.3205, is a prerequisite

and mandatory requirement for compliance with MCL 600.3204.    MCL

600.3204(4) provides in pertinent part:

(4) *A party shall not commence proceedings* under this chapter to foreclose a mortgage of property claimed as a principal residence exempt from tax under section 7cc of the general property tax act, 1893 PA 206, MCL 211.7cc, if 1 or more of the following apply:

(a) Notice has not been mailed to the mortgagor as required by section 3205a.

(b) After a notice is mailed to the mortgagor under section 3205a, the time for the mortgagor to request, either directly or through a housing counselor, a meeting with the person designated under section 3205a(1)(c) under section 3205b has not expired.

(c) Within 30 days after a notice is mailed to the mortgagor under section 3205a, the mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c) and 90 days have not passed after the notice was mailed. This subdivision does not apply if the mortgagor has failed to provide documents as required under section 3205b(2).

(d) Documents have been requested under section 3205b(2) and the time for producing the documents has not expired.

**(e) The mortgagor has requested a meeting under section 3205b with the person designated under section 3205a(1)(c), the mortgagor has provided documents as required under section 3205b(2), and the person designated under section 3205a(1)(c) has not met or negotiated with the mortgagor under this chapter.**

(f) The mortgagor and mortgagee have agreed to modify the mortgage loan and the mortgagor is not in default under the modified agreement.

**(g) Calculations under section 3205c(1) show that the mortgagor is eligible for a loan modification and foreclosure under this chapter is not allowed under section 3205c(7).**
MCLS § 600.3204

Michigan Courts have determined non-compliance with MCL 600.3204 and

irregularity in the foreclosure process,

> Even without a finding of bad faith, however, language from Senters suggests that an accident or mistake in connection with the sale, which would seem to include the statutorily-required

13

notice containing the amount claimed due, may justify a court's reversal of a sheriff's sale. 443 Mich. at 55, 57, 503 N.W.2d at 643, 645. Furthermore, Plaintiffs argue that the inflated force-placed insurance premiums contributed to their default by making the monthly payments unaffordable. (Compl. ¶ 45.) This default provided the grounds to initiate the foreclosure. Mich. Comp. Laws § 600.3204(1)(a) (providing that foreclosure is appropriate upon default in a condition of the mortgage). If the excessive premiums caused this default, then the placement of the force-placed policy appears to go to the very heart of PHH's authority to foreclose in the first place.

To the extent that an "accident or mistake" constitutes an "irregularity," the Court finds that the facts as pled in the Complaint have alleged an irregularity in connection with the foreclosure. The Court bases this finding on the peculiar chain of alleged events, events which the Court must accept as true for the purpose of a motion to dismiss. First, PHH selected the force-placed insurance policy. Second, the excessive premium contributed to the default. Third, Plaintiffs were denied a loan modification because their monthly escrow payments, which included the insurance premiums, were too high for them to qualify. Fourth, the excessive amount claimed due in the foreclosure notice was a result of the insurance policy. Fifth, after the sheriff's sale, PHH reduced the insurance coverage to the amount Plaintiffs owed on the principal and refunded Plaintiffs the amount they overpaid. Sixth, PHH purchased the property for approximately $135,000 when the balance on the principal was around $85,000. Seventh, and lastly, PHH refused to take any corrective action beyond providing Plaintiffs with a refund of the funds they overpaid for the insurance. These allegations give the Court pause in dismissing Plaintiffs' illegal foreclosure claim at this early stage of litigation. (**Exhibit 2**, *Galliard v. USAA Fed. Sav. Bank*, 2012 U.S. Dist. LEXIS 163211 (E.D. Mich. Nov. 15, 2012))

Plaintiffs demonstrate an irregularity in the foreclosure process by Defendant, a clear violation of MCL 600.3205, rendering Defendant incapable of legally foreclosing under MCL 600.3204.

**A.     Defendant Failed To Comply With MCL 600.3205c, Which Incorporates The Federal Modification Guidelines.**

MCL 600.3205c specifies the formula and procedures for modification under Michigan law. The procedures contained within the statute are mandatory before a sheriff's sale can occur.

MCL 600.3205c provides,

(a) The loan modification program or process targets a ratio of the borrower's housing-related debt to the borrower's gross income of 38% or less, on an aggregate basis. Housing-related debt under this subdivision includes mortgage principal and interest, property taxes, insurance, and homeowner's fees.
  (b) To reach the 38% target specified in subdivision (a), 1 or more of the following features:
    (i)  An interest rate reduction, as needed, subject to a floor of 3%, for a fixed term of at least 5 years.
    (ii)  An extension of the amortization period for the loan term, to 40 years or less from the date of the loan modification.
    (iii)  Deferral of some portion of the amount of the unpaid principal balance of 20% or less, until maturity, refinancing of the loan, or sale of the property.
    (iv)  Reduction or elimination of late fees.

  (2) In making the determination under subsection (1), if the mortgage loan is pooled for sale to an investor that is a governmental entity, the person designated under section 3205a(1)(c) shall follow the modification guidelines dictated by the governmental entity**.**

  (3) **In making the determination under subsection (1), if the mortgage loan has been sold to a government-sponsored enterprise, the person designated under section 3205a(1)(c) shall follow the modification guidelines dictated by the government-sponsored enterprise…**

(5) **Before 90 days after the notice required under section 3205a(1) is sent or 10 days after the meeting between the**

15

**borrower and the person designated under section 3205a(1)(c), whichever is later, the person designated under section 3205a(1)(c) shall provide the borrower with both of the following:**

**(a) A copy of any calculations made by the person under this section.**

**(b) If requested by the borrower, a copy of the program, process, or guidelines under which the determination under subsection (1) was made.**

(6) Subject to subsection (7), if the results of the calculation under subsection (1) are that the borrower is eligible for a modification, the mortgage holder or mortgage servicer shall not foreclose the mortgage under this chapter but may proceed under chapter 31. If the results of the calculation under subsection (1) are that the borrower is not eligible for a modification or if subsection (7) applies, the mortgage holder or mortgage lender may foreclose the mortgage under this chapter.

(7) If the determination under subsection (1) is that the borrower is eligible for a modification, the mortgage holder or mortgage servicer may proceed to foreclose the mortgage under this chapter if both of the following apply:

(a) The person designated under section 3205a(1)(c) has in good faith offered the borrower a modification agreement prepared in accordance with the modification determination.

(b) For reasons not related to any action or inaction of the mortgage holder or mortgage servicer, the borrower has not executed and returned the modification agreement within 14 days after the borrower received the agreement.

(8) If a mortgage holder or mortgage servicer begins foreclosure proceedings under this chapter in violation of this section, the borrower may file an action in the circuit court for the county where the mortgaged property is situated to convert the foreclosure proceeding to a judicial foreclosure. If a borrower files an action under this section and the court determines that the borrower participated in the process under section 3205b, a modification agreement was not reached, and the borrower is eligible for modification under subsection (1), and subsection (7) does not apply, the court shall enjoin foreclosure of the mortgage by advertisement and order that the foreclosure proceed under chapter 31. MCLS § 600.3205c (emphasis added)

16

In the instant matter, Plaintiffs met the statutory criteria, but their loan was never properly considered for modification in violation of MCL 600.3205c, and Plaintiffs' complaint clearly articulates this claim.  Defendant ignored the statutory mandate of MCL 600.3205c and attempted a feeble remedial attempt for compliance by sending a letter reciting Plaintiffs' alleged income and expenses **but no calculations**.  (*See,* **Docket No. 1-8**)

The United States District Court, Eastern District of Michigan, Southern Division, in *Roller v. Federal National Mortgage Association et al.*, 2012 U.S. Dist. LEXIS 127830 (E.D. Mich. June 4, 2012), determined:

> As the Court has noted above, Roller does not have an affirmative right to a mortgage modification, irrespective of qualifications. However, § 600.3205c does require that a borrower be provided with "a copy of any calculations made by the person under this section." § 600.3205c(5)(a). Defendants make two arguments specific to this claim. First, Defendants contend that because Roller does not allege that she requested the calculations, Defendants' statutory obligation to provide the calculations was not triggered. Motion at 15. The Court rejects this argument. Tellingly, Defendants offer no authority in support of this assertion.  Indeed, the language of the statute does not support Defendants' argument. The statute states in relevant part: (5) Before 90 days after the notice required under section 3205a(1) is sent or 10 days after the meeting between the borrower and the person designated under section 3205a(1)(c), whichever is later, the person designated under section 3205a(1)(c) shall provide the borrower with both of the following: (a) A copy of any calculations made by the person under this section.
>
> (b) If requested by the borrower, a copy of the program, process, or guidelines under which the determination under

subsection (1) was made.§ 600.3205c(5)(a)-(b) (emphasis added). Thus, there is no request requirement. Defendants had an obligation to provide Roller with their loan modification calculations.

The second argument that Defendants make is that, even if they did not give Roller the required calculations, ***Roller was not harmed because, as demonstrated by the fact that she did not exercise her right to redeem the property, she would have been in no better position if she had gotten the calculations***. Motion at 15-16. Defendants cite in support *Jackson Investment Corporation v. Pittsfield Products, Inc.*, 162 Mich. App. 750, 413 N.W.2d 99 (Mich. Ct. App. 1987). In *Jackson*, the Michigan Court of Appeals concluded that a defect in the notice of the foreclosure sale rendered the foreclosure sale voidable, as opposed to void, and ultimately concluded that there were no equitable grounds for invalidating the sale because plaintiff never attempted to redeem the premises and waited several months after the redemption period had ended before filing suit. Id. at 101-02. Jackson's rationale has been applied by other judges of this court as well. See *Worthy v. World Wide Fin. Servs., Inc.*, 347 F. Supp. 2d 502, 511 (E.D. Mich. 2004), aff'd 192 F. App'x 369 (6th Cir. 2006) (concluding that, despite failure to give proper notice of foreclosure sale, there were no grounds to invalidate the sale because plaintiff was not prejudiced where plaintiff allowed six months to pass after the foreclosure sale before filing a complaint and never redeemed the property.

The *Roller* court rejected the defendants argument stating:

The Court rejects Defendants' argument. *Jackson* and its progeny involve the failure to comply with the notice requirements related to foreclosure sales. However, ***in this case, the alleged failure is that Defendants did not provide the loan modification calculations they used to deny Roller a loan modification. The procedural defect here is different in a significant way. In the Jackson line of cases, the defendants' entitlement to foreclose was never in question. Here, if Defendants calculations were wrong, Roller may have met Defendants' own requirements for a loan modification.***

18

> *Accordingly, Roller could potentially make the powerful prejudice argument that her not receiving the calculations prevented her from raising the meritorious argument that she met the modification qualifications, and thus, the property should never have been subject to foreclosure in the first place.*
>
> In addition, the Court will not punish Roller for not having yet explicitly articulated such a prejudice argument. Defendants have not cited (and the Court is not aware of) any authority stating that the harm/prejudice element must be affirmatively pled in a complaint. The Court simply cannot conclude at this early stage that the alleged defect resulted in no prejudice to Roller. (emphasis added) (**Exhibit 3**, *Roller v. Fannie Mae,* 2012 U.S. Dist. LEXIS 127830, 12-16 (E.D. Mich. June 4, 2012))

Moreover, the HAMP Guidelines as incorporated into MCL 600.3205c(3),

expressly prohibiting any referral to foreclosure or a sheriff's sale, and provides:

> **3.1 Suspension of a Referral to Foreclosure**
> A servicer **may not refer any loan to foreclosure or conduct a scheduled foreclosure sale unless and until at least one of the following circumstances exists**:
>
> - The borrower is evaluated for HAMP and is determined to be ineligible for the program;

or

> - The borrower is offered a TPP, but fails to make current trial period payments as set forth in Section 8.3;….

> **3.2 Suspension of Foreclosure Proceedings in Process**
> With respect **to a borrower who submits a request for HAMP consideration after a loan has been referred to foreclosure, the servicer must, immediately upon the borrower's acceptance of a TPP based on verified income, and for the duration of the trial period, take those actions within its authority that are necessary to halt further**

**activity and events in the foreclosure process, whether judicial or non-judicial, including but not limited to refraining from scheduling a sale or causing a judgment to be entered.**

The servicer will not be in violation of this section to the extent that: (a) a court with jurisdiction over the foreclosure proceeding (if any), or the bankruptcy court in a bankruptcy case, or the public official charged with carrying out the activity or event, fails or refuses to halt some or all activities or events in the matter after the servicer has made reasonable efforts to move the court or request the public official for a cessation of the activity or event; (b) the servicer must take some action to protect the interests of the owner, investor, guarantor or servicer of the loan in response to action taken by the borrower or other parties in the foreclosure process; or (c) there is not sufficient time following the borrower's acceptance of the TPP for the servicer to halt the activity or event, provided that in no event shall the servicer permit a sale to go forward. The servicer must document in the servicing file if any of the foregoing exceptions to the requirement to halt an existing foreclosure sale is applicable. (emphasis added) (**Exhibit 4**, HAMP Guidelines excerpts, pp. 52-54).

Defendant did not adhere to these guidelines or MCL 600.3205c, and moved forward with a foreclosure attempt, which can only be stopped by the emergency injunctive relief of this Court.

Plaintiffs, very much like the borrowers in *Galliard* and *Roller, supra,* were placed in a position whereby the Defendant frustrated Plaintiffs' ability to retain their home by failing to comply with mandatory requisites under MCL 600.3205, thereby prejudicing the Plaintiffs by trying to foreclose on the property when an opportunity through the state mediation process existed for Plaintiffs to retain their home.

Defendant has failed to meet its burden and the motion to dismiss and for summary judgment should be denied.

## IV.   DEFENDANT'S MOTION SHOULD BE DENIED PURSUANT TO THE DOCTRINE OF EQUITABLE ESTOPPEL, AS DEFENDANT VIOLATED MCL 600.3205 AND MCL 600.3204.

Plaintiffs in this matter have become victims of the bad faith conduct and blatant legal violations of the Defendant.  This conduct is beyond the control of the Plaintiffs, yet they will bear the severe consequences of such conduct in the form of a foreclosure of their home.  Plaintiffs have done everything in accordance with the law to try to consummate an avenue of loss mitigation under MCL 600.3205. Plaintiffs provided all documents necessary to effectuate a modification review. (*See,* **Docket No. 1-12**) Defendant's representations failed to properly process paperwork, lost paperwork, and failed to evaluate Plaintiffs' loan for a modification.  Defendant did not respond to any of Plaintiffs' requests for modification and, to-date, still has not provided Plaintiffs with adequate documentation as to whether they are eligible for modification, or if not, what criteria Plaintiffs did not meet for a modification.

The Defendant should be estopped pursuant to the doctrine of equitable estoppel from pursuing any foreclosure activity until Plaintiffs have had an opportunity, as provided by Michigan statute MCL 600.3205, for a proper review of their loan for modification.  The doctrine of equitable estoppel arises when one,

by his acts, representations, or admissions, or by silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist and such other rightfully relies and acts on such a belief so that he will be prejudiced if the former if permitted to deny the existence of such facts. *Lichon v American Universal Insurance Co.*, 435 Mich 408, 415; 459 NW2d 288 (1990).

In the instant matter, Plaintiffs relied on Defendant's representations that it would work with Plaintiffs to retain their home in accordance with Michigan law. Defendant cannot be allowed to unjustly place Plaintiffs in a position of reliance then arbitrarily change its position to Plaintiffs' detriment and in violation of the law, specifically MCL 600.3205. Defendant's motion should be denied and, at minimum, there are genuine issues of material fact as to whether the Making Homes Affordable Program was applicable to Plaintiffs as incorporated into MCL 600.3205c, and why Defendant has failed to comply with its statutory duty and moved forward with a foreclosure attempt.

Defendant's motion to dismiss and motion for summary judgment must be denied.

## CONCLUSION

Plaintiffs sought a trial modification from Defendant Bank of America. Plaintiffs complied with all the requirements under MCL 600.3205. (*See,* **Docket Nos. 1-2, 1-7, and 1-12**) Defendant Bank of America has not submitted any legal authority that would preclude the Plaintiffs from moving forward on their claims. Moreover, Plaintiffs clearly established an irregularity for Defendant's violation of MCL 600.3205 and MCL 600.3204.

WHEREFORE, Plaintiffs Anthony Browning and Mable Carter respectfully request this Honorable Court to deny Defendant Bank of America's motion to dismiss and motion for summary judgment.

Respectfully submitted,

VANESSA G. FLUKER, ESQ., PLLC

/s/Vanessa G. Fluker
Vanessa G. Fluker (P64870)
Attorney for Plaintiffs
2921 East Jefferson, Suite 200
Detroit, MI 48207
Phone (313) 393-6005
vgflawyer@sbcglobal.net

DATED: October 17, 2013

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of the Court using the Court's ECF system, which will send notification of such filing to all counsels of record.

VANESSA G. FLUKER, ESQ., PLLC

/s/Vanessa G. Fluker
Vanessa G. Fluker (P64870)
Attorney for Plaintiffs
2921 East Jefferson, Suite 200
Detroit, MI  48207
Phone (313) 393-6005
vgflawyer@sbcglobal.net

DATED:  October 17, 2013